## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 12** |
| | ) | |
| **JERALD WALT CARTER,** | ) | **Case No. 17-70277-JTL** |
| **CARTER AND SONS, LLC,** | ) | **Administratively Consolidated** |
| | ) | |
| Debtors. | ) | |
| | | |
| **AgGEORGIA FARM CREDIT, ACA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding** |
| | ) | **No. 17-07014-JTL** |
| **JAMES F. CARTER,** | ) | |
| **JERALD WALT CARTER, and** | ) | |
| **CARTER AND SONS FARMS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION ON AgGEORGIA AND
### JAMES F. CARTER'S CROSS MOTIONS FOR SUMMARY JUDGMENT

This case is before the Court on cross Motions for Summary Judgment filed by

AgGeorgia Farm Credit, ACA, the Plaintiff ("AgGeorgia"), and James F. Carter, a defendant.

Defendants J. Walt Carter (herein "Walt Carter")[1] and Carter and Sons Farms, LLC did not oppose AgGeorgia's Motion for Summary Judgment.[2] The Court heard oral arguments on this matter on May 9, 2018.

Having carefully considered the arguments set forth in the parties' briefs and in oral argument, the Court has determined the matter before it is ultimately a question of law and there is no dispute of material fact. Therefore, the Court GRANTS summary judgment in favor of the Plaintiff.

*I.    Facts*

On March 18, 2013, Carter and Sons LLC ("Carter and Sons"), an entity solely owned by Walt Carter, purchased 5.02 acres of real estate in Echols County from James Carter. (Compl. (AP No. 1) ¶ 11; Admitted in James Carter's Answer (AP No. 11) ¶ 11). That $1.675 million purchase (the "Packing Shed Purchase") was financed through two notes. James Carter extended a $900,000 unsecured loan to Walt Carter. AgGeorgia also extended a $605,770 loan (the "2013 Loan") to Carter and Sons, which Walt Carter guaranteed. (Plaintiff's Statement of Uncontested Material Facts as Required by M.D. LBR 7056 (AP No. 35) [herein "7056 Statement"] ¶ 1; Admitted by failure to explicitly deny in James Carter's Reply to 7056 Statement (AP No. 40) ¶ 1).

The 2013 Loan was secured by various conveyances of collateral. First, Walt Carter and Carter and Sons granted a security interest in the purchased real estate. (Compl. ¶ 13; Admitted in Walt Carter's Answer ¶ 13). Additionally, to facilitate the financing of the transaction, James Carter granted a security interest in two tracts of property located in Lowndes County. (7056

---

[1] To the best of the parties' knowledge, they are not aware of any direct relation between James Carter and Walt Carter.
[2] The plan treats AgGeorgia's claims as secured. AgGeorgia opposes the plan's confirmation.

Statement ¶ 4; Admitted by failure to explicitly deny in James Carter's Response to 7056 Statement ¶ 4). James Carter's grant of a security interest was not eleemosynary. The proceeds of the Packing Shed Purchase offset James Carter's prior obligation to AgGeorgia. (7056 Statement ¶ 2; James Carters' Response to 7056 Statement ¶ 2). Further, the property James Carter pledged to finance the Packing Shed Purchase was the same property pledged in his prior obligation to AgGeorgia. (Oral Arg. (AP No. 42) at 59:37).

James Carter memorialized his grant of this security interest in two documents. First, he executed a deed to secure debt (the "Deed to Secure Debt"). In addition to securing the funds financing the Packing Shed Purchase, the Deed to Secure Deed contained an "open-end clause." (7056 Statement; Admitted by failure to explicitly deny in James Carter's Response to 7056 Statement ¶ 4). That clause extended the security interest to "all additional loans and advances that may subsequently be made to [Walt Carter] (or to any one or more of the parties designated as Undersigned or Borrower, with the written consent of the remainder of said Undersigned or Borrower) by [AgGeorgia.]" (James Carter's Brief in Response to Plaintiff's Motion for Summary Judgment (AP No. 39) [herein "James Carter's Brief"] Ex. 4 Pg. 2). The Deed to Secure Debt was recorded in the Lowndes County real estate records on March 19, 2013. (*Id*.)

Second, James Carter signed a hypothecation agreement dated March 18, 2013 (the "Hypothecation Agreement"). (James Carter's Brief Ex. 5, Pg. 1) In the agreement, James Carter again granted a security interest in the same separately owned tracts in Lowndes County to secure Walt Carter's obligations under the 2013 Loan. Like the Deed to Secure Debt, the Hypothecation Agreement contained an open-end clause. That clause provided: "[James Carter] agrees with the Lender that, to secure payment of the Liabilities (hereinafter defined), the Lender shall have a lien upon, security title to, and a security interest in [property owned by James

3

Carter.]" (*Id.*) The agreement defined "Liabilities" as "all obligations of [Walt Carter] to the Lender, however incurred or evidenced… *now or hereafter existing, or due or to become due.*" (*Id.*) (emphasis added). Further, the agreement stated James Carter "waives notice of the existence or creation of all or any of the Liabilities." (*Id.*) The Hypothecation Agreement was recorded on March 19, 2013. (*Id.*)

Between 2013 and 2016 Walt Carter obtained additional loans from AgGeorgia. In 2014 Walt Carter obtained an operating loan from AgGeorgia. The record is unclear as to exactly when Walt Carter incurred that debt and the exact amount of the loan; however, the parties each acknowledged the existence of the loan in oral argument. (See Oral Arg. at 54:50-56:13 and 1:01:03-1:02:58). The parties also acknowledged AgGeorgia did not seek James Carter's consent to extend the 2014 security interest to this new loan. (*Id.*). In 2015, Walt Carter obtained additional financing from AgGeorgia of approximately $802,000. For that loan, AgGeorgia did seek and obtain James Carter's consent. (James Carter's Brief, Ex. 6 and James Carter's Dep. Pgs. 49-52[3]).

In 2016, Walt Carter obtained a $1 million loan from AgGeorgia ("the 2016 Note"). (Compl. ¶ 17 and Walt Carter's Ans. ¶ 17). James Carter did not consent to the 2016 Note nor is there any evidence he was even aware of the loan. (James Carter's Resp. to 7056 Statement ¶ 6). Nevertheless, AgGeorgia contends the security interests extend to the 2016 Note by operation of the open-end clauses in the Deed to Secure Debt and Hypothecation Agreement (together "the Open-End Clauses").

## II. Jurisdiction[4]

---

[3] During James Carter's deposition he mistakenly stated that he signed the consent in 2014; however, his counsel stated that the correct date was in fact 2015. (*See* James Carter's Brief Pg. 2).

[4] No party challenged the Court's jurisdiction to enter a declaratory judgment; however, "it is the duty of the federal court to determine the matter *sua sponte*…." *Fitzgerald v. Seaboard S.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985)

28 U.S.C. § 2201 grants federal courts the authority to enter a judgment that declares "the rights and other legal relations of any interested party" in any "case of actual controversy within [the court's] jurisdiction."[5] AgGeorgia seeks an order determining the Open-End Clauses extend James Carter's grant of a security interest to the 2016 Note, which, of course, pertains to the "rights" or "legal relations" between the parties. Whether a case presents an "actual controversy" is a question pertaining to federal courts' constitutional jurisdiction. *See Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (holding a federal court must determine there is "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A federal court only has jurisdiction where the plaintiff establishes it:

> (1) suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Further, "a plaintiff seeking only… declaratory relief must prove not only an injury, but also a real and immediate threat of future injury in order to satisfy the injury in fact requirement." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004). Federal Courts in this and other districts have determined that a "real and immediate threat of future injury" may arise

---

(quoting *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). Further, the parties have consented to the issuance of a final order. (Compl. ¶ 10; James Carter's Ans. ¶ 10; Defendants Walt Carter and Carter & Sons' Ans. (AP No. 12) ¶ 10). Therefore, this Court may issue a final order pursuant to 28 U.S.C. § 157(b).

[5] That bankruptcy courts are the creation of Congress and not an Article III court does not deprive them of the authority to enter a declaratory judgment. By operation of 28 U.S.C. § 151, bankruptcy courts are units of the district court and have equivalent authority to enter appropriate judgments on matters within their jurisdiction—subject, of course, to 28 U.S.C. § 157.

when the rights of the parties could be conclusively determined in imminent litigation. *See, e.g.*, *Bayer CropScience, LP v. Booth*, 2005 U.S. Dist. LEXIS 19411 (M.D. Ga. 2005); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D. N.Y. 1994).

Here, it is clear that the declaratory judgment the plaintiff seeks pertains to the parties' current rights and obligations under the Deed to Secure Debt and Hypothecation Agreement and that an interpretation of those rights would concretely change the parties' contractual obligations. Therefore, AgGeorgia clearly has standing to assert the action.  Further, although the bankruptcy proceedings cannot terminate AgGeorgia's liens as they relate to James Carter's property, the proceeding will alter Walt Carter's obligations to AgGeorgia.  This will create a default under the terms of the note and will entitle AgGeorgia to seek enforcement of its security interest. Should AgGeorgia initiate a foreclosure proceeding, it would need to determine the lien's extent. James Carter's challenge to Open-End Clause therefore creates a real and immediate threat of future injury because a successful challenge would significantly reduce AgGeorgia's collateral securing the 2016 Note.

This Court's jurisdiction over the matter, therefore, is the only remaining issue. The bankruptcy court through referral from the district court[6] has jurisdiction over all civil proceedings "arising in or related to a case under title 11."[7] 28 U.S.C. § 1334(b).  A case is sufficiently "related to" the Bankruptcy Code "if the proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Estate of Jackson v. Schron (In re Fundamental Long term Care, Inc.)*, 873 F.3d 1325, 1336 (11th Cir. 2017) (quoting *Pacor Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original). Therefore, the test within this

---

[6]*See* 28 U.S.C. § 157(a).
[7] All references to Title 11 of the United States Code herein will refer to that title as "the Bankruptcy Code" or "the Code."

6

circuit for determining whether a matter is sufficiently related to the Code to give a bankruptcy court jurisdiction is whether "the outcome… in any way impacts upon the handling and administration of the bankrupt estate." *Estate of Jackson*, 873 F. 3d at 1337 (quoting *Pacor*, 743 F.2d at 994) (internal quotations omitted). As previously discussed, whether the Open-End Clauses extend James Carter's grant of a security interest to the 2016 Note impacts both the security of AgGeorgia's claim and the disbursement of estate assets. Therefore, this Court has "related to" jurisdiction over this matter.

### III.    *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, the Court must "grant summary judgment if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue of fact is material if it affects the outcome of the case as identified by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, in considering a motion for summary judgment, the court should only base its decision on facts that can be reduced to admissible evidence at trial. *Macuba v. DeBoer*, 193 F.3d 1316, 1323 (11th Cir. 1999). Evidence that would be inadmissible at trial cannot defeat a summary judgment motion. *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996).

This case is particularly well suited for summary judgment. The Parties do not contest the execution of the documents nor do they dispute their authenticity. In fact, the issue before the Court is largely one of interpreting the rights between the parties as set forth in the Deed to Secure Debt and Hypothecation Agreement. Whether an agreement's language is ambiguous is a question of law, as opposed to one of fact. *Garrett v. Southern Health Corp. of Ellijay, Inc.*,

7

3210 Ga. App. 176, 182 (2013). Therefore, no question of material fact would remain if the Court found the contract is unambiguous. The Court's only task would be to interpret the rights of the parties as set forth within the four corners of the agreement.

## IV.   Conclusions of Law

AgGeorgia's Motion for Summary Judgment argues the Open-End Clauses unambiguously extend James Carter's grant of a security interest to the 2016 Note. AgGeorgia contends the language is clear and does not contravene Georgia law and that this Court is therefore obliged to enforce the negotiated agreement between the parties.

The Defendant disagrees. James Carter's cross-motion for summary judgment argues the Open-End Clauses are ambiguous and that the Court should interpret the clauses to require JamesCarter's consent to apply his 2013 grant of a security interest to the 2016 Note. Further, James Carter argues O.C.G.A. § 44-14-1(b) limits the Open-End Clauses' application, as less than all of the parties to the contract consented to the agreement.

### a.   *Clark v. AgGeorgia Farm Credit, ACA*

In support of his arguments, James Carter relies heavily on *Clark v. AgGeorgia Farm Credit, ACA*. 333 Ga. App. 73 (2015). His reliance is for good reason. Not only was the Plaintiff a party in the *Clark* case (and represented by the same counsel no less), that case involved the exact language used in the Deed to Secure Debt in this case. In *Clark*, two brothers executed two deeds to secure debt that each pledged the same jointly owned property as collateral. Each brother signed a deed as a "Borrower" and signed both deeds as the "Undersigned." *Id.* at 73-74. In doing so, each brother granted a security interest in the jointly owned property that secured each other's individual debts to the bank.

8

The deeds to secure debt included open-end clauses that extended the security interest to "all additional loans and advances that may subsequently be made to Borrower (or to any one or more of the parties designated as Undersigned or Borrower, with the written consent of the remainder of said Undersigned or Borrower), by Lender, which will be evidenced by a note or notes." *Id.* at 76.  Accordingly, when one of the brothers obtained additional financing from the bank, the bank argued that the debt was secured by the jointly owned property regardless of whether the other brother consented to this extension.  Upon the borrowing brother's default and a subsequent foreclosure action, the other brother filed an action for wrongful foreclosure. *Id.* at 74. The trial court dismissed the action, finding the open-end clause was enforceable.

On appeal, the Georgia Court of Appeals reversed.  In coming to this conclusion, the court determined that the language in the deed could reasonably be interpreted in two ways: (i) that the deed required the consent of all parties when the borrower incurred additional debt or (ii) that the deed only required consent of the remaining undersigned parties if a party solely listed as the "Undersigned" incurred additional debt. *Id.* at 77.  Having determined the language in the deed was ambiguous, the court applied the rules of contract construction and found the deed should be interpreted to require the consent of all parties to extend the security interest to newly incurred debt.  In coming to this conclusion, the court examined the parties' prior conduct, noting that Ag Georgia "routinely obtained the nonborrowing brother's consent to loans extended to the other brother." *Id.* at 80.  The court also paid particular attention to the effect of O.C.G.A. § 44-14-1(b), which the court found "limits the operation of [open-end clauses] to the original parties to the security instrument." *Id.* at 81.  The court noted the language did not explicitly waive this requirement, and so it inferred the parties intended to incorporate it within the contract. *Id.*

9

Having been presented with the arguments announced in *Clark*, the Court will next address whether the Open-End Clauses here should be interpreted to require James Carter's consent.

### b. *Interpretation of the Open-end Clauses*

In Georgia, a deed to secure debt memorializes the relationship and obligations between the parties to the deed. *See generally You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 74 (2013) (holding that when a security deed grants a power of sale, the holder of the security deed is authorized to exercise that power even if it does not hold the note). The terms of a deed are interpreted like those of contracts; that is, a court should ascertain the intention of the parties as set forth within the deed. *Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 189-90 (2013). Additionally, when an agreement is memorialized in two documents, as it is here, the documents "may be read together to show one contract." *Foreman v. Chattooga Intl. Tech.*, 289 Ga. App. 894, 896 (2008).

If the language of the contract "is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, [the contract provisions] shall be enforced irrespective of all technical or arbitrary rules of construction." *Shepherd* 325 Ga. App.at 190 (quoting *Homelife Communities Group v. Rosebud Park, LLC*, 280 Ga. App. 120, 122 (2006)). Therefore, a court's analysis in contractual disputes begins with the language of the contract and whether that language is ambiguous. A contract is ambiguous if the provisions could be reasonably interpreted in more than one way. *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (1989); *see also Verret v. ABB Power T & D Company, Inc.*, 237 Ga. App. 492, 436 (1999) ("Ambiguity means duplicity, indistinctness, or uncertainty of meaning or expression.") (citing, *Bumgarner v. Green*, 227 Ga. App. 156, 159 (1997)).

James Carter argues that the Deed to Secure Debt and the Hypothecation Agreement conflict each other and therefore, the Court should find the contract is ambiguous. The Deed to Secure Debt, he suggests, requires the consent of the "remaining parties." While on the other hand, the Hypothecation Agreement waives James Carter's right to consent. Certainly, a court should find a conflicting document ambiguous. *See Brevard, Inc. v. Broadwater Management, Inc.*, 235 Ga. App. 496, 498 (1998).

Counter to James Carter's argument, however, the *Clark* court determined that the same language in the Deed to Secure Debt does not explicitly require or waive the non-borrowing party's consent; rather, the *Clark* court found it necessary to rely upon the rules of contract construction to determine the meaning of the deed.[8] Alone and without reference to rules of construction, the open-end clause in the Deed to Secure Debt is unclear whether it requires James Carter's consent to extend the security agreement. The Hypothecation Agreement, however, resolves that ambiguity. The agreement unambiguously waives James Carter's right to "notice of the existence or creation of all or any of [Walt Carter's future obligations to AgGeorgia]." With such an explicit provision, the Court finds no conflicting language and that no ambiguity exists. The clear language in the Hypothecation Agreement ultimately distinguishes this case from the holding in *Clark*. Under Georgia law, a court should not interpret a contract to render an explicit provision "meaningless" or a "mere surplusage." *Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 319 (2011). Resorting to the rules of construction to interpret a provision in a manner that contravenes another unambiguous provision in the contract clearly runs afoul of Georgia law.

---

[8] *Clark* is binding precedent as to the language in the Deed to Secure Debt. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) (holding decisions of intermediate state appellate court on state law are binding on a federal court unless the court determines that there is some significant doubt that the state supreme court would reject the statement of law).

James Carter also argues that AgGeorgia's request for consent in 2015 indicates AgGeorgia understood the agreement to require James Carter's consent. This argument fails because under Georgia Law a court must find ambiguity in the contract to consider extrinsic evidence. *See Davis v. United Amer. Life Ins. Co.*, 215 Ga. 521, 526 (1959) ("Construction of ambiguous contracts is the duty of the court, and it is only after application thereto of the pertinent rules of construction, and they remain ambiguous, that extrinsic evidence is admissible to explain the ambiguity.")  As previously discussed, James Carter clearly waived his right to notice of Walt Carter's incurring additional debt.  Accordingly, no ambiguity exists and the Court is prohibited from using the 2015 consent to interpret the parties' rights under the agreement.  Even if the Court did consider the document, it would not change its interpretation. Though Walt Carter loaned money from AgGeorgia in the years between 2014 and 2016, AgGeorgia only requested James Carter's consent in 2015.  One request for consent between the parties over the course of three years does not create a general course of conduct that any fact finder could reasonably infer reflected the parties' understanding of the agreement.

Further, the 2015 Consent Agreement was not, as James Carter additionally argued, an implicit waiver of the Hypothecation Agreement.  First, procedural issues arise in asserting this argument.  James Carter did not plead the affirmative defense of Wavier in his Answer, as required by FRBP 7008(c)(1).  Additionally, there is no evidence in the record supporting AgGeorgia's actions were a waiver of their rights under the Hypothecation Agreement. Georgia law provides that, although a party may waive a contractual right implicitly, the facts surrounding the purported wavier "must amount to an intentional relinquishment of a known right." *Goldsmith v. Peterson*, 307 Ga. App. 26, 28 (2010).  The 2015 consent agreement does not acknowledge AgGerogia's relinquishment of a right and is only signed by James Carter.

Because there is no ambiguity, Georgia law requires the Court to interpret the rights between the parities according to language in the contract. Nevertheless, James Carter argues that the Open-End Clause contravenes O.C.G.A. § 44-14-1(b) and accordingly, the Court should not enforce the provision without James's consent.

### c. *O.C.G.A. § 44-14-1(b)*

O.C.G.A. § 44-14-1(b) provides:

> …the operation of "open-end" clauses contained in real estate mortgages or deeds conveying realty as security for a debt, which clauses provide that, in addition to securing the debt named or described in the instrument, such instruments or the property thereby conveyed shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor, is limited to the other debts or obligations arising *ex contractu*, as distinguished from those arising *ex delicto*, between the original parties to the security instrument.

While the section's main purpose appears to limit the extension of a security interest to debts arising *ex delicto*, Georgia courts have interpreted the subsection to require, under certain circumstances, the consent of all original parties to the security instrument to extend the operation of an open-end clause. *See, e.g.*, *Hill v. Perkins*, 218 Ga. 354 (1962); *Cordele Banking Co. V. Powers*, 217 Ga. 616 (1962). Although Georgia law seemingly prefers the consent of all "original parties to the security instrument," it recognizes circumstances in which such consent is not necessary. An open-end clause may permit the extension of a security interest to newly acquired debt without the original parties' consents where the security agreement clearly and unambiguously provides such a right. *Sutton v. Atlantic Bank & Trust Co.*, 167 Ga. App. 861 (1983); *In re Ryles*, 457 B.R. 138 (Bankr. M.D. Ga. 2011).

In *Sutton*, for example, a security deed contained an open-end clause securing any indebtedness from the lender to the "Grantee." Two individuals granted the security interest in jointly owned property and thus, each was a "Grantee" as defined in the deed. When one of the

13

borrowers incurred additional debt with the lender, the lender argued the debt was secured through the extension of an open-end clause, even without the other borrower's consent. To support this argument, the lender pointed to security deed's definition of "Grantee," which included the plural or singular. That is, both or either borrower's future obligations to the lender were secured by the collateral. The court agreed, finding the contract language superseded O.C.G.A. § 44-14-1(b)'s default construction.

Transitioning to the facts in this case, AgGeorgia argues the Open-End Clause within the Hypothecation Agreement waives James Carter's right to notice. The language there clearly extends the security interest to Walt Carter's later incurred debt, even without James Carter's consent. This clearly places the hypothecation agreement within the exception acknowledged in *Sutton* and by this Court in *Ryles*.

### *CONCULSION*

Having determined that together the deeds to secure debt and the Hypothecation Agreement unambiguously extend James Carter's grant of a security interest to subsequent loans, there is no ambiguity as to the meaning of the contract. Without ambiguity, there is no question of fact to be determined at trial. Therefore, this Court interprets the agreement according to the plain language set forth in the documents. James Carter waived his right to notice of future obligations incurred by Walt Carter. Accordingly, by operation of the Open-End Clauses, James Carter's grant of a security interest extends to Walt Carter's future obligations to AgGeorgia. Georgia law does not prohibit the operation of this negotiated agreement.

For these reasons, the Court GRANTS AgGeorgia's motion for summary judgment. The Court will enter an order in accordance with this Memorandum Opinion.